JUDGE PRYOR
delivered the opinion oe the court.
An information was filed in the Clay Circuit Court by the commonwealth’s attorney for the Fifteenth Judicial District, charging the appellant, George W. Baker, an attorney of that court, with willfully, fraudulently, and corruptly erasing certain words in a letter (written by the judge of that circuit to the county judge of Clay County), for the corrupt, fraudulent, and dishonest purpose of deceiving the county judge, in order to procure the latter to allow bail to one John Bishop, who had been indicted by the grand jury of that county for the crime of murder, and to enable the said Bishop to escape punishment by forfeiting his bail and departing from the commonwealth.
The specific charge contained in the information is, in substance, “that the county judge of Clay County having refused to allow" bail to one John Bishop, who had been indicted for murder, and not being satisfied with the decision rendered, forwarded a letter by the appellant to the circuit judge, then holding court in an adjoining county, making inquiry of the latter as to his (the county judge’s) jurisdiction in such eases.” Upon receiving this letter the circuit judge replied to the letter of the county judge as follows:
“Son. JB. P. White: My opinion is that in the absence of the circuit judge from the county the county judge has the right to grant the writ of habeas corpus, hear the return, and adjudge as may seem right to him. I would suggest, however, that if I were in the county and application was made to me, I would not allow bail because of the order heretofore fixing bail, but would only allow it if I thought it proper after having heard the evidence in the ease.
“Very respectfully, W. H. Randall.”
“ That the said Baker, to whom said letter was delivered, erased and obliterated the said letter of Judge Randall, so as to make it read as follows:
*594 “ ‘My opinion is that in the absence of the circuit judge from the county the county judge has the right to grant the vyrit of habeas corpus and hear the return, and adjudge as may seem right to him. I will suggest, however, that if I were in the county and, application was made to m,e, I would allow bail because of the order heretofore fixing bail.
‘ Very respectfully, W. H. Randall.’
“That the circuit judge having delivered the letter to Baker, it was delivered to the county judge in its altered condition, and in consequence of which the county judge granted the said Bishop bail. It is averred and charged that the said Baker willfully and corruptly altered and erased the letter of Judge Randall with the corrupt and dishonest purpose of deceiving Judge White into granting Bishop bail. He files this information and complaint, and asks that the said Baker be tried on the same, and avows his readiness and ability to prove and establish the charges made.”
An affidavit was filed in court as to the truth of the charges made against the appellant by one Abner Turner, and upon which the court by an order directed the information to be filed. A rule was then awarded against appellant to answer the information and show cause, if any he can, why his name should not be stricken from the roll of attorneys admitted to practice in that court, for the dishonorable and corrupt conduct as in said information is set forth, specified, and charged. The appellant appeared in court and filed his demurrer to the complaint. He then responded to the rule, as well as the information upon which it is based, by denying all the material statements therein contained, and also questioning the jurisdiction of the court to determine the issue made between himself and the commonwealth.
It is insisted that Judge Hunt of the Tenth Judicial District, who had been commissioned by the governor to try the .cause, had no power to call a special term of the Clay Circuit *595 Court for that purpose. The record shows that the regular judge of the Clay Circuit Court declined to hear the case, and that the parties were unable to agree upon or elect an attorney to preside. No application for a change of venue was made or an election had; and these- facts appearing, the governor commissioned the judge of the Tenth Judicial District, in accordance with the tenth section of article 4, chapter 12, of the General Statutes, to try the case, and designated the 26th of January, 1874, as the time.
The judge, as directed by his commission, held the court on the day fixed, and by reason of the statute and his commission was invested with all the power that could have been exercised by the regular judge if the latter had presided at the hearing. The commonwealth is prosecuting the charge contained in the information, and it is more in the nature of a criminal than civil proceeding, and therefore sections 9 and 10 of the statute referred to, regulating the proceedings in criminal and penal prosecutions, apply to this case, and the court below had the jurisdiction to hear and determine it.
It appears from the evidence that Bishop had been indicted for murder, and the indictment by some means had been lost or destroyed. The case was referred again to the grand jury, and another indictment returned into court. Bail had been allowed the accused on the first indictment, but no order fixing the bail when the last indictment was found. The accused was arrested upon the charge and lodged in jail. The appellant was at the time county attorney, and, being related to the prisoner, properly declined to prosecute. The facts conduced to show that he never acted as attorney for either the commonwealth or the defense; but, as a friend and relative of the party charged with the crime, was very active in his efforts to have him released from custody by giving bail. The county judge had refused to allow bail after hearing the evidence, although the appellant had obtained the written opinion of the attorney- *596 general that he had this power if the testimony was sufficient to grant it. The same advice was given the county judge by the circuit judge of the district, but his letter was so altered as to induce the county judge to believe that it was his duty to allow bail, because it had been granted when the first indictment was returned into court. This letter had been intrusted by the circuit judge to appellant to deliver to the county judge, and without detailing all the facts in relation to it we can only say that a careful reading of the record leaves no doubt but that the contents of this letter were so changed by the appellant as to deceive the county judge, and entirely subvert its purpose and meaning.
The specific charge made in the information having been sustained by the proof, the court below adjudged that the name of George W. Baker be stricken from the roll of attorneys admitted to practice in the Clay Circuit Court. It was insisted on demurrer and also on the final hearing—1. That the malpractice, if established as alleged, was with reference to the proceedings in the court held by the county judge, and had no relation to any action or prosecution pending in the Clay Circuit Court; 2. That the act complained of, if sustained by the evidence, was not done or committed by the accused as an attorney; 3. That the letter written by the circuit judge to the county judge was not official, and the latter, although asking the advice, was under no obligation to abide by it when given.
It is not insisted by the attorney for the state that this prosecution is based upon any alleged misconduct of the accused as an attorney employed either for the party charged with the crime of murder or in the prosecution against him, as it is clearly shown that the appellant was acting as the friend of his nephew (whó was then confined in jail), with the avowed purpose of obtaining his discharge from custody by the execution of a bail-bond. He could not have been *597 guilty of malpractice as an attorney, for the reason that he was never employed in the case or pretended to act as such. Nor is it attempted to be maintained on the part of the commonwealth that the proceeding in which this fraud was practiced was had in the circuit court, or that the advice contained in the letter of the circuit judge was official in its character. The only ground upon which the judgment of the court below can be sustained is that the conduct of the appellant was such as necessarily affected his professional integrity and rendered him unfit to practice his profession.
Section 2, chapter 5, General Statutes, page 147, provides that “before a license shall be granted to any person to practice as an attorney at law he shall obtain a certificate from the county court of the county in which he. resides that he is a person of honesty, probity, and good demeanor, •which may be granted from the personal knowledge of the county judge, or on evidence for and against the motion, and notice to the county attorney.”
A similar enactment is to be found in the general laws of the state in force prior to the adoption of the General Statutes, and the production of this certificate was then, as now, a prerequisite to the applicant’s obtaining a license to practice law. The applicant for license may be .learned in the law, and possessed of the legal ability necessary to the discharge of all the duties of an attorney, and still no license will be granted him in the absence of a certificate from the county court of his residence evidencing his character for honesty, probity, and good demeanor.
If the evidence of such a moral character must be produced in order to obtain the license, it is equally as essential that this character should be retained; and when an attorney commits an act, whether in the discharge of his duties as attorney or not, showing such a want of personal or professional honesty as renders him unworthy of public confidence, *598 it is not only the province but the duty of the court, upon a proper and legitimate presentation of the case, to strike his name from the roll of attorneys. Nor is it necessary, as contended by appellant’s counsel, that the offense should be of such a nature as would subject him to an indictment. He has by his own misconduct divested himself of qualifications that were indispensable to the practice of his profession; and while he may regard the judgment depriving him of that right as a punishment for the offense, the action of the court is based alone upon the ground of public policy and for the public good. It may be true that some attorneys indulge in vices affecting to some extent their moral character; still when such practices do not affect their personal or professional integrity they can not be .made the basis of such a proceeding as this.
As said by the court in the case of John Percy (9 Tiffany, N. Y.), “To warrant a removal the character must be bad in such respects as shows the party unsafe and unfit to be intrusted with the powers of his profession.” It is also said in the same case, “ It is insisted that the misconduct justifying a removal is some deceit, malpractice, or misdemeanor practiced or committed in the exercise of the profession only, and that general bad character or misconduct will not sustain this proceeding. I can not concur in this position.”
In Leigh’s case (1 Munford, 481) Judge Roan says, “ None are permitted to act as such but those who are allowed by the judges to be skilled in the law, and certified by the court of the county of their residence to be persons of honesty, probity, and good demeanor. Having obtained the sanction of these tribunals, an attorney is licensed or allowed to practice, and the courts have also a continuing control over them, with power to revoke their licenses for unworthy practices or behavior.”
In The People v. Turner (1 California) that court, iu *599 commenting on the power to strike the name of an attorney from the rolls, says, “ The order should therefore be regarded as the exercise of a power, inherent in every court which has the authority to admit attorneys to practice, of striking their names from the rolls, or, as the order expresses it, of expelling them from the bar, whenever they are guilty of such conduct, either in or out of their profession, as shows them to be unfit persons to practice it.”
In the case of Mills, an attorney (1 Michigan Rep. 394): “As it is a condition precedent to his admission at the bar that an attorney, should possess a blameless moral character, I think he forfeits his rights as such attorney upon a breach of that condition. In the exercise of a sound discretion the court should only entertain such as are in their nature gross, and unfit a person for an honest discharge of the trust reposed in him.”
In Ex parte Brownsall Lord Mansfield remarked, “ It is not by way of punishment, but the court in such cases exercise their discretion whether a man whom they have formerly admitted is a proper person to be continued on the rolls or not.” The authorities referred to, as well as many others that might be cited, sustain the action of the court in the present case. Authorities are to be found adopting the rule that an attorney can not be deprived of his right to practice unless the offense committed is indictable by law. The weight of authority, as well as the reasoning upon which it is based, being against the latter rule, it is rendered unnecessary for this court to determine whether the offense charged is indictable or not.
It would be unjust to the profession, the purity and integrity of which it is the duty of all courts to preserve, and a disregard of the public welfare to permit an attorney who has forfeited his right to public confidence to continue the practice of his profession. The question of the power of the court to strike the name of an attorney from the rolls in a proceeding *600 like this, for such a cause, has been recognized and maintained by so many adjudications that it can not at this day be considered an open question. It may be conceded that the county judge was not controlled in his action by the contents of the letter in its altered condition, and that he disregarded the advice of both the attorney-general and the circuit judge, acting alone upon his own judgment, and still the action and conduct of the appellant with reference to the letter is left unexplained by him, when the commonwealth, by the evidence adduced, has made good the charges set forth in the complaint.
The judge below was compelled, in the discharge of his official duty, to order the name of appellant stricken from the rolls—a power that “ should be discreetly but fearlessly exercised.” It has been done in this case.
Judgment affirmed.