Rogers v. Rundell.

NELLIE ROGERS, Respondent, v. M. W. RUNDELL
et al., Appellants.

Kansas City Court of Appeals, January 6, 1908.

1. **MASTER AND SERVANT: Negligence: Increased Hazard: Contributory Negligence: Assumption of Risk.** If a servant's peril is increased by the master's negligence and the servant knowing thereof continues in the employment, the question of contributory negligence arises and not the question of the assumption of risk; and an instruction in regard to the assumption of risk is held improper.

2. **MINES AND MINING: Evidence: Conclusion of Witness: Props: Collar Brace.** Certain questions propounded to a witness are held improper since they call for the expression of the witness's conclusion and not for an expression of his opinion; but he could properly testify to the effect of leaving out collar braces from props set up to support the roof.

Appeal from Jasper Circuit Court.—*Hon. Hugh Dabbs,*
Judge.

AFFIRMED.

*F. L. Farlow* and *A. E. Spencer* for appellants.

(1)     Exclusion of plaintiff's evidence was error. Mason v. Mining Co., 82 Mo. App. 367; Jones v. Lumber Co., 58 Ark. 125, 23 S. W. 679; Jackson v. Hardin, 83 Mo. 175; Schlicker v. Gordon, 19 Mo. App. 479. (2)     Admission of defendant's evidence was error. Hill v. Sturgeon, 28 Mo. 323; Monahan v. Co., 58 Mo. App. 68; Benjamin v. Co., 50 Mo. App. 602; Line v. Mason, 67 Mo. App. 279; Hogan v. Co., 150 Mo. 36; Buckalew v. Railroad, 107 Mo. App. 586; Greenwell v. Crow, 73 Mo. 639.     (3)  Instruction numbered 5 was a proper declaration of law of this case.     Deceased was an experienced miner and had helped cut and timber this drift.     He knew the entire situation.     Sinberg v. Falk Co., 98 Mo. App. 546; Bradley v. Railway Co.,

138 Mo. 293; Winkler v. Co., 137 Mo. 394; Hurst v. Railroad, 163 Mo. 309. (4) Instruction numbered ten was also properly given, under the evidence in this case. Deceased knew the situation and the dangers thereof. The instruction was proper under the evidence. Lacey v. Oil Co., 129 Mo. 32; Bradley v. Railroad, 138 Mo. 293; Hurst v. Railroad, 163 Mo. 309; Fuglor v. Bothi, 117 Mo. 475; Minnier v. Railroad, 167 Mo. 99. It was not necessary to plead assumed risk. Dakan v. Co., 197 Mo. 238. (5) The court erred in refusing to direct the jury to find for defendants.

*W. C. Irwin, W. J. Owen* and *Thomas & Hackney* for respondent.

(1) The court erred on the trial of the cause in refusing to permit the witness Moon to answer. The witness was shown to be a miner of sixteen years' experience and it was a proper matter for expert testimony. Combs v. Roundtree Const. Co., 104 S. W. (Mo.) 77; Buckley v. Kansas City, 95 Mo. App. 189; Benjamin v. Railroad, 133 Mo. 288; Spencer v. Bruner, 103 S. W. (Mo.) 578. (3) The court committed error in the trial of the cause in permitting the question propounded to Norris Ashcraft by counsel for the defendants. Hurst v. Railroad, 163 Mo. 321. (4) The court committed error on the trial of the cause in giving instructions asked by the defendants and given by the court and especially in giving instruction numbered 10. Graci v. Hill O'Meara Const. Co., 102 S. W. 594; Hester v. Packing Co., 95 Mo. 23; Hun v. Railroad, 92 Mo. 440; Devlin v. Railroad, 87 Mo. 545; Thorp v. Railroad, 89 Mo. 650; Soeden v. Railroad, 100 Mo. 673; Cole v. Railroad, 183 Mo. 94; Daken v. Chase & Son Merc. Co., 197 Mo. 267. (5) The defendants' answer being a general denial only, neither the issue of contributory negligence nor assumed risk was in the case and it would have been error to have given a proper instruction.

BROADDUS, P. J.—The cause was tried before a jury and a verdict rendered in favor of the defendants, which upon motion of plaintiff was set aside. From the action of the court in setting aside the verdict the defendants appealed.·

The suit is against the defendant for damages in the sum of $4,500, which plaintiff claims was the result of defendants' negligence, which caused the death of her husband Charles M. Rogers, a miner. The negligence, alleged was, generally, in failing to. properly cut and construct timbers or otherwise protect the drift from caving; in cutting the drift too wide and too high; in failing to furnish sufficient timbers and of sufficient size and quality to render the drift reasonably safe; in failing to properly place and secure said timbers so as to prevent their falling or being knocked down, and in suffering a large boulder to remain in the roof of the drift. The answer was a general denial.

The grounds upon which the court granted a new trial were as follows, that the court erred in giving improper instructions asked by defendants in refusing competent relevant evidence offered by the plaintiff, and in admitting incompetent and irrelevant evidence offered by the defendant.

The plaintiff introduced evidence, that at the time of the killing of her husband he was in the employ of the defendant, in defendant's mine in a drift from 160 to 170 feet from the surface of the ground; that this drift was eighty feet long from the shaft, and that it was thirty-four feet wide and about twenty-five feet high; that it was in, what was called bouldry selvage ground, which was treacherous and was liable to fall from the effects of the air dissolving and loosening it. There was evidence, that the place where plaintiff's husband was killed and where the cave of the roof occurred, and on the left-hand side of the drift, were two old drifts, which ran into the main drift six feet from the bottom

thereof and extended as high as the roof of the same; that the defendants failed to put in supports of the roof in said drifts and failed to shore up the left side of the drift and failed to take necessary precaution to prevent the dirt from falling from the roof of the two old drifts; that before the timbering was done in the drift, there was a boulder in the roof that hung down below the place where the timbering should go and that defendant's foreman instead of removing the boulder popped it off, that is to say in mining parlance shot off the hanging part, and that it was then discovered that the boulder was in selvage ground, and this boulder was uncovered and showed a surface of several feet.

There was evidence, that the posts used by defendants in timbering the shaft were placed as far apart as eight feet and in some places further, and in one place the posts were fourteen feet apart; and that in some instances these posts were of no greater diameter than seven or eight inches at the smallest part. It was in evidence, that in mining, collar braces were used to keep the post from spreading or coming together, but that at the point where the final brake came that killed plaintiff's husband, no collar braces had been placed; and that the posts were not staid at that point. The evidence tended to show, that the weight of the timbers unless they were braced would have a tendency to spread; and that on the day before the killing of plaintiff's husband while the miners were at work that they heard a rumbling in the roof; that loose dirt and other substances were caving down on the left side of the drift and on the left side of the timbers.

We have stated some of the main evidence of the case and it is sufficient to say that plaintiff's evidence tended to support the allegation of her petition. It was disclosed that plaintiff was a miner of many years experience, who had been working in the drift where the accident occurred, and that he had helped to cut

the timber in the drift and that he knew all that could be known about its condition. The evidence of the defendant tended to show that the roof, where it fell was apparently a lime roof which would stand without timbers but notwithstanding they timbered the same in the usual way; that the drift was considered safe and that its dangerous condition was not discovered before the accident and that the boulders fell suddenly and without warning.

It has been stated that the court set aside the verdict in favor of the defendant on the grounds of error in giving instruction in their behalf. Instruction numbered 10 given for defendants is attacked by plaintiff as being erroneous and as such a sufficient justification of the court in setting aside the verdict and granting a new trial. This instruction is as follows:

No. 10. "If you believe from the evidence that Charles Rogers knew the width and heighth of the drift in which he was injured, and the character and condition of the ground in which it was cut, so far as said character and condition was reasonably ascertainable and knew the way in which the timbering was done and the risks and danger incident to working and mining therein under all said conditions, and continued to work therein without complaint, then as a matter of law he assumed the risk of the dangers thus known and of injuries caused thereby, and your verdict must be for defendants."

In Dakan v. Chase & Son Mercantile Co., 197 Mo. 238, the court in speaking of a similar case uses the following language: "If the peril of the servant in the performance of his duty is increased by the negligence of the master, and if the servant, knowing that the master has been thus negligent and that, that negligence has rendered the performance of his duty more hazardous, continues in the performance of that duty a question of contributory negligence then arises not a ques-

tion of assumption of risk." This seems to be the general rule adopted by the appellate courts of this State. In such cases the rule "is that if the danger arising from the master's negligent act is so obvious that the servant, considering his capacity and opportunity must have known and realized its degree, the court would declare his act of so continuing in his work contributory negligence as a matter of law, but if the peril was not so obvious, if the danger was such as to make it a question whether or not the servant, considering his capacity and opportunity of judging, might reasonably expect that he could continue the service by exercising ordinary care, then it is a question for the jury." [Idem, l. c. 267.]

The instruction in this case is similar to the one condemned in the case cited. The instruction in the case cited directed "a verdict for defendant if the plaintiff was aware of the plan of the buildings, its compartments, the manner of conducting the business, etc., regardless of plaintiff's capacity to know or appreciate the danger and regardless of the question of whether or not she might have reasonably thought that under the conditions as they appeared to her she could proceed with the work with reasonable expectation of safety, using ordinary care." Tested by the rule that is thus laid down instruction 10 given in behalf of defendant was erroneous. One important element is entirely left out of consideration in said instruction namely whether or not the deceased might have reasonably under the conditions as they appeared to him have proceeded with the work, with the expectation of safety by the use of ordinary care. The evidence tended to show that the plaintiff's husband might reasonably have thought that he could safely proceed with his work. In fact the defendants are contending in their argument that there was no apparent danger at all. Under such circumstances it is clear that the dan-

ger was not so obvious and threatening as would prevent an ordinary prudent man, in the exercise of reasonable care from continuing his work. The defendants contend however, as there was no evidence that the deceased made any complaint of the dangerous condition of the mine or had any assurance of its safety by defendant, the instruction was proper. We will notice some of them. In Lucey v. Hannibal Oil Co., 129 Mo. 238, the action is based on negligence of defendant in propping up a lateral crossbeam in a building where plaintiff was required to work in discharge of his duty, in consequence of which the cross-beam fell upon and injured him. The court held that "It was not a latent defect of which he had no knowledge and of which his employer knew or might have known by the exercise of that degree of diligence that is required of the master in furnishing a safe place for his servant to work." But that the danger was not only apparent but that the plaintiff assisted in making it dangerous. In Bradley v. Railroad, 138 Mo. 293, the decision of the court does not sustain defendant's theory. In that case the plaintiff was required to work at an embankment that had been undermined and where the danger was obvious yet the court held notwithstanding the obvious danger which was known to the plaintiff that the defendant was required to use reasonable care to prevent the embankment from falling upon the plaintiff. In Hurst v. Railroad, 163 Mo. 309, where the servant had full knowledge of the danger and accepted the employment, it was held he assumed the risk attendant to the discharge of his employment. And the principal in the case of Fugler v. Bothe, 117 Mo. 475, was similar. In Minnier v. Railroad, 167 Mo. 99, it was held that "The servant in entering the service of the master assumes the risk that ordinarily and usually are incident to the business being conducted by the master."

We do not think the case of Lucey v. Hannibal Oil Co., supra (or others cited), is in conflict with Dakan v. Chase & Son Mercantile Co., but entirely in harmony with it for the danger was so obvious and threatening as to deter a man of ordinary prudence to continue his work at the place where he was injured, and the court so found as a matter of law.

During the trial a witness was asked the question: "What do you say from your experience in and about the Webb City district as to the propriety of driving a drift with lime stone and boulders and selvage thirty-five feet wide and twenty-five feet high?" The witness was an experienced miner and it is contended by plaintiff that it is a proper question for expert testimony. We think not as it only called for an expression of conclusion and not the expression of an opinion. The same witness was asked the following question: "What effect would the leaving out of a collar brace have on the strength of the timbering in a drift?" The question was objected to and the objection was sustained. We believe the question was competent. [Buckley v. Kansas City, 95 Mo. App. 189; Combs v. Roundtree, 104 S. W. 77, 205 Mo. 367; Spencer v. Bruner, 103 S. W. 578, 126 Mo. App. 94; Stanley v. Railroad, 121 Mo. App. 537.]

The defendants asked the witness the following question: "I will ask you to state whether in your judgment as a miner, if it was proper or improper to cut that drift at the width which it was cut and the way in which the ground was handled?" The question asked for a conclusion and not for an opinion of the witness which was improper. However the answer of the witness was proper as he states that it was cut the usual width. The other questions and answers put to the same witness were proper questions to answer.

We see no reason for interfering with the action of the court in setting aside the verdict and granting a new trial. Therefore the cause is affirmed. All concur.