COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

v.

Paul F. CHRISTOFFERS, Respondent.

No. 83–742.

Supreme Court of Iowa.

May 16, 1984.

Frank A. Comito, Jr., of Comito & Capps, Des Moines, for complainant.

Paul F. Christoffers, pro se.

**UHLENHOPP, Justice.**

In this proceeding we review a Grievance Commission recommendation that the license of respondent Paul F. Christoffers to practice law be suspended for a year commencing August 12, 1983. We temporarily suspended respondent's license on that date after he pleaded guilty in federal district court to receiving unauthorized attorney fees in violation of section 928(e) of title 33, United States Code (1976). *See* Iowa Court Rule 118.14.

The commission held an evidentiary hearing and made its recommendation to this court. Iowa Court Rule 118.9. As no appeal was taken, we review de novo the record made before the commission, make a determination, and take appropriate action. Iowa Court Rule 118.10. We are not bound by the recommendation of the commission, although we give it respectful consideration. *Committee on Professional Ethics and Conduct v. Rabe,* 284 N.W.2d 234, 235 (Iowa 1979).

Respondent practiced law in Chariton, Iowa. His practice consisted largely of representing victims of pneumoconiosis, "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of employment in an underground coal mine." 30 U.S.C. § 902(b) (Supp.1981). The affliction is commonly known as "black lung disease." Respondent helped victims and their families claim benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901 *et seq.* (1976 and Supp.1981). We are concerned here with the manner in which respondent received compensation for those services.

Statutes and rules strictly regulate compensation of attorneys for representation of black lung claimants. Attorney fees are available only when the attorney is successful in his representation, and then only in an amount approved by the administrative agency or court before which the services were rendered. No other fees are permitted. *See* 20 C.F.R. §§ 725.366, 802.203 (1983). The purpose of the controls is to impose reasonable limits on amounts of professional fees. *See* 20 C.F.R. § 722.124. Receipt by an attorney of an unauthorized fee is a misdemeanor under section 928(e) of title 33, United States Code, which was incorporated into the Black Lung Benefits Act by section 932(a) of title 30. Respondent was convicted under section 928(e), title 33, which provides:

Any person who receives any fees, other consideration, or any gratuity on account of services rendered as a representative of a claimant, unless such con-

sideration or gratuity is approved by the deputy commissioner, Board, or court ... shall upon conviction thereof, for each offense be punished by a fine of not more than $1,000 or by imprisonment for not more than one year, or by both such fine and imprisonment.

For the alleged reasons of low fees and long delays in receiving approval of fees, *see, e.g., Ballard v. Schweiker,* 724 F.2d 1094 (4th Cir.1984), respondent began representing black lung claimants only if they agreed to make him gifts of twenty-five percent of back-due benefits won through his efforts. This was to be his total fee. Respondent testified at the Grievance Commission hearing that he believed these gifts were not in violation of law. He claims he had not read section 928(e), which is in a different title from the Black Lung Act, and was thus unaware that receipt of gratuities was unlawful and that criminal penalties were possible. Respondent had, however, received a form letter, sent to attorneys who represent black lung claimants, which warned that "[s]evere penalties, including fine and imprisonment, may be invoked under (33 U.S.C. 928(e)) whenever any person receives any unauthorized fee for services rendered in connection with a claim."

On April 20, 1983, a federal grand jury indicted respondent for receiving unauthorized attorney fees from five black lung claimants in violation of section 928(e). Respondent pleaded guilty to receiving unauthorized fees from the following clients: Henry A. Elliott, $3319.20, William Neighbors, $3512, Gilmore Doggett, $5000, Hilario Hernandez, $3585, and Charles L. Buban, $6048. By his pleas, respondent admitted all essential elements of the offenses. *Hernandez-Uribe v. United States,* 515 F.2d 20 (8th Cir.1975), *cert. denied,* 423 U.S. 1057, 96 S.Ct. 791, 46 L.Ed.2d 647 (1976). The federal court sentenced him to imprisonment for one year on each of the five counts to run concurrently, but suspended the sentences, placed him on probation for five years, and ordered him to make restitution of $14,990.10. That amount represented excess fees. Respon-

dent also agreed to repay other sums with respect to gifts which were not involved in the criminal charges.

After we temporarily suspended respondent's license, the Grievance Commission heard the case and concluded that respondent's conduct constituted unethical and unprofessional conduct in violation of subsections 3 and 4 of section 610.24 of the Iowa Code of 1981 as well as disciplinary rules 1–102(A)(1), (3), (5), and (6) and ethical considerations 1–5 and 9–6 of the Iowa Code of Professional Responsibility for Lawyers.

Through the gift scheme respondent regularly received higher fees than the amounts eventually approved. He did not make any refunds until ordered to do so. He regarded twenty-five percent as a reasonable gift, as it was at the rate generally approved during the early years of his black lung practice. Congress, however, had outlawed the setting of attorney fees by attorney-client agreement and had devised its own system for determining reasonable fees, in order to protect black lung claimants. Thus by definition, a reasonable fee for representation of such claimants was the fee approved through the statutory process; it was not the amount respondent and a client determined the fee should be. Respondent was aware of this system of approval, and we find he realized that accepting gifts was not in keeping with at least the spirit of the Black Lung Benefits Act. "A lawyer should maintain high standards of professional conduct ... and he should refrain from all illegal ... conduct. Because of his position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude." EC 1–5. "Every lawyer owes a solemn duty ... to encourage respect for the law ...." EC 9–6. We conclude that discipline should be administered.

Appropriate discipline, when discipline is indicated, is determined by considering " 'the respondent's fitness to continue in the practice of law, deterrence of others from similar conduct, and assurance to the public that the courts will maintain the ethics of the profession.' " *Committee on Professional Ethics & Conduct v. Rabe*, 284 N.W.2d 234, 235 (Iowa 1979) (quoting *Committee on Professional Ethics & Conduct v. Roberts*, 246 N.W.2d 259, 262 (Iowa 1976)). The form and extent of the discipline is tailored to the facts of each case. *Committee on Professional Ethics & Conduct v. Rogers*, 313 N.W.2d 535, 537 (Iowa 1981). Based on these guidelines, we hold respondent's license should be suspended indefinitely and he should not be permitted to apply for reinstatement for a period of two years from August 12, 1983. We reach this conclusion because respondent resolved problems of low fees and long delays in a manner proscribed by statute. At the very least, his acts violated EC 1–5 and EC 9–6, a sufficient basis upon which to rest our decision.

Respondent's license is therefore suspended indefinitely, and this court will not entertain an application for reinstatement before August 12, 1985. Iowa Court Rule 118.12. On application for reinstatement, respondent must establish that he has not performed any facets of the practice of law during the suspension period and he must also provide evidence that he has in good faith made, or attempted to the best of his financial ability to make, restitution of excess fees as ordered by the federal court. Any application for reinstatement must in addition comply with Iowa Court Rule 118.-13.

LICENSE SUSPENDED.

All Justices concur except REYNOLDSON, C.J., who takes no part.